## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

|  |  |
|---|---|
| _____ )<br>MELISSA MCGREW, SARAH GUNTER, )<br> and KRISTINA DUNLAP )<br>on behalf of themselves and all others )<br>similarly situated, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>VCG HOLDING CORP., KENTUCKY )<br>RESTAURANT CONCEPTS, INC. d/b/a )<br>PT'S SHOWCLUB LOUISVILLE, )<br>TROY LOWRIE, and MICHAEL )<br>OCELLO )<br> )<br>Defendants. )<br>_____ ) | Case No. <u>3:16-cv-397-TBR</u> |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### I.   INTRODUCTION

1.      This is a class action brought by Melissa McGrew, Sarah Gunter, and Kristina
Dunlap on behalf of current and former exotic dancers of Defendants, on behalf of themselves
and of all others similarly situated pursuant to Fed. R. Civ. P. 23 and a Fair Labor Standards Act
("FLSA") collective action brought by Melissa McGrew and Sarah Gunter brought on behalf of
herself and of all others similarly situated.

2.      Defendants have unlawfully misclassified their exotic dancers as independent
contractors instead of as employees.  In doing so, Defendants have violated the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. § 207 and K.R.S. 337.285 by failing to pay minimum wage.
Additionally, Defendants have violated K.R.S. 337.060 by making deductions from their exotic

dancers' pay for such things as administrative fees, fees charged if they are late to work, fees for missing a shift, and a so-called "lease payment" charged to the dancers to use the stage, and by requiring the dancers to give a portion of their wages to "tip out" the bar tenders, DJs, and door men.

3.      Accordingly, the above-named Plaintiffs bring this action on behalf of themselves and on behalf of a class of similarly situated persons ("the Class members") who have worked as exotic dancers at the PT's Show Club in Louisville Kentucky, for statutory and common law violations that stem from this misclassification.

## II.    JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to federal question jurisdiction under 28 U.S.C. § 1332, in that this case arises under a federal law of the United States.

5.      This Court has supplemental jurisdiction over Plaintiffs' Kentucky state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Plaintiffs' claims under the FLSA that they form part of the same controversy.

6.      Venue in the Western District of Kentucky is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the unlawful conduct described herein occurred within Louisville, Kentucky.

## III.   THE PARTIES

7.      Plaintiff Melissa McGrew is an adult resident of Elizabethtown, KY.  From approximately 2003 to June 30, 2014, Plaintiff McGrew worked for Defendants in the State of Kentucky as an exotic dancer at PT's Showclub in Louisville, Kentucky.

8.      Plaintiff Sarah Gunter is an adult resident of Louisville, KY. From approximately 2008 to May 2015, Plaintiff Gunter worked for Defendants in the state of Kentucky as an exotic dancer at PT's Showclub in Louisville, Kentucky.

9.      Plaintiff Kristina Dunlap is an adult resident of Radcliff, Kentucky. From approximately February 2010 until summer 2012, Plaintiff Dunlap worked for Defendants in the State of Kentucky as an exotic dancer at PT's Showclub in Louisville, Kentucky.

10.     Plaintiffs McGrew, Gunter, and Dunlap (collectively "Plaintiffs") bring this action on behalf of a class of similarly-situated individuals, namely, all other persons who have worked for Defendants as exotic dancers at PT's Showclub in Louisville, Kentucky, and who have either been classified as independent contractors or have not been paid or otherwise properly accorded treatment as employees.

11.     Additionally, Melissa McGrew and Sarah Gunter bring this action as a FLSA collective action on behalf of a class of similarly-situated individuals, namely all other persons who have worked for Defendants as exotic dancers at PT's Showclub in Louisville, Kentucky, and who have either been classified as independent contractors or have not been paid or otherwise properly accorded treatment as employees.

12.     Defendant VCG Holding Corp. is a foreign corporation incorporated in Colorado, with its headquarters at 390 Union Blvd., Suite 540, Lakewood, CO 80228.  Process may be served on its registered agent, Rand Kruger, 6040 Dutchmans Lane, Suite 220, Louisville, KY 40205. On information and belief, Defendant VCG Holding Corp. owns and controls Defendant Restaurant Concepts, Inc. d/b/a PT's Showclub Louisville, as well as many other adult entertainment venues across the country.

13.     Defendant Kentucky Restaurant Concepts, Inc. d/b/a PT's Showclub Louisville (hereinafter "PT's Showclub Louisville") is a corporation incorporated in Kentucky with its principal office located at 390 Union Blvd., Suite 540 Lakewood, CO 80228. Process may be served on its registered agent, Rand Kruger, 6040 Dutchmans Lane, Suite 220, Louisville, KY 40205. On information and belief, PT's Showclub Louisville is a wholly owned subsidiary of, and is controlled by, Defendant VCG Holding Corp.

14.     Troy Lowrie is a resident of Lakewood, Colorado and is the owner and CEO of VCG Holding Corp. Mr. Lowrie is also the owner, President, and a Director of Kentucky Restaurant Concepts, Inc. d/b/a PT's Showclub Louisville.

15.     Michael Ocello is a resident of Sauget, IL and is the President and a Director of VCG Holding Corp., as well as the Vice President and a Director of Kentucky Restaurant Concepts, Inc. d/b/a PT's Showclub Louisville.

16.     Defendants VCG Holding Corp. Kentucky Restaurant Concepts, Inc. d/b/a PT's Showclub Louisville, Troy Lowrie, Michael Ocello (collectively "Defendants") are joint employers under the FLSA and Kentucky law. On information and belief Defendants' operations are interrelated. Defendants share common management, and as VCG Holding Corp. owns PT's Showclub Louisville, they share common ownership and centralized control of labor relations.

## IV.    STATEMENT OF FACTS

17.     During all times material to this complaint, Defendants acted jointly, directly or indirectly in the interest of an employee with respect to Plaintiffs.

18.     During all times material to this complaint, Defendant VCG Holding Corp. was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and within the meaning of KRS 337.010(1)(d).

19.     During all times material to this complaint, Defendant Kentucky Restaurant Concepts, Inc. was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and within the meaning of KRS 337.010(1)(d).

20.     During all times material to this complaint, Defendant Troy Lowrie was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and within the meaning of KRS 337.010(1)(d).

21.     During all times material to this complaint, Defendant Michael Ocello was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and within the meaning of KRS 337.010(1)(d).

22.     During all times material to this complaint, Defendant VCG Holding Corp.  was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,00 per year (exclusive of excise taxes at the retail level).

23.     During all times material to this complaint, Defendant Kentucky Restaurant Concepts, Inc., was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,00 per year (exclusive of excise taxes at the retail level).

24.     As a matter of economic reality, Defendants jointly employed Plaintiffs and their similarly situated co-employees at the PT's Showclub located at 227 E. Market Street, Louisville, Kentucky 40202.

25.     Defendants operate an adult entertainment venue, PT's Showclub Louisville, located at 227 E. Market Street, Louisville, KY. 40202. In order to carry out their central function of adult entertainment, Defendants purport to contract with individuals such as the named Plaintiffs as exotic dancers.

26.     Plaintiffs and putative class members have performed services as exotic dancers for Defendants.  In order to receive such work, Defendants required Plaintiffs to sign an agreement which stated that Plaintiffs were independent contractors.

27.     Although Defendants have classified Plaintiffs and the Class members as independent contractors, the behavioral and financial control manifested over the dancers by Defendants demonstrates that they are Defendants' employees. Such control includes, but is not limited to the following matters:

a.      At all times material to this Complaint, Defendants have jointly set the amounts of pay for Plaintiffs and the Class Members, and Plaintiffs, the Class Members and their fellow dancers have not been permitted to negotiate fees with the customers.

b.      At all times material to this Complaint, Defendants have created the dancers' schedules, and if the dancers do not work the shifts assigned to them by Defendants, Defendants deduct wages from the dancers' wages and/or terminate the dancers. When dancers have had to miss shifts, Defendants have taken deductions from their wages, even when the dancers' informed Defendants in advance and found other dancers to cover their shifts.

c.   At all times material to this Complaint, Defendants have jointly controlled the dancers' appearance, mandating that the dancers wear jewelry, bracelets, earrings, and evening gowns. Defendants do not permit the dancers to have tattoos any larger than a few inches, and they do not permit the dancers to have any facial piercings other than earrings. In one instance, Defendants terminated a dancer for gaining weight, even though the reason for this weight gain was pregnancy.

d.   At all times material to this Complaint, Defendants have also jointly exerted control over the clothing that the dancers wore while on the job. The dancers have not been permitted to wear certain outfits. For example, because PT's Showclub was affiliated with Hustler magazine, the dancers have not been permitted to wear any clothing with the Playboy logo. If Defendants find that the dancers' clothing is not acceptable, the dancers' supervisor, referred to as the "area director," requires the dancer to change clothes before being permitted to perform.

e.   At all times material to this Complaint, the area director and other supervisors have regularly supervised the dancers while they are performing, frequently giving instructions to the dancers via a microphone system, even while the dancer is performing on stage. Additionally, the area director has jointly controlled the music that the dancers perform to, by providing instructions to the DJ.

f.   Additionally, at all times material to this Complaint, Defendants have jointly distributed written rules to Plaintiffs and the Class members governing appearance, hours of work, conduct while working, amounts charged to customers, and other things.

28.     Pursuant to Defendants' joint treatment of Plaintiffs and the Class members as independent contractors, Defendants have jointly deducted and continue to jointly deduct certain expenses directly from the compensation it pays, including deductions for a purported stage lease payment, fees for each dance on stage and private dance, penalties for being late, calling off of a shift, or leaving a shift early, and other deductions. Moreover, Defendants have jointly compelled and continue to jointly compel Plaintiffs and the Class members to incur certain expenses which would normally be borne by an employer, such as a mandatory policy requiring the dancers to "tip out" the DJ, bar tenders and doormen.

29.     Defendants have jointly retained and continue to jointly retain the exclusive right to change the price of dancers' services to customers at any time.

30.     Defendants have jointly retained and continue to jointly retain the right to terminate the Plaintiffs and the Class members without cause at any time.

31.     Plaintiffs and the Class members have been required and continue to require to show up for work at a time determined by Defendants and a deduction is made from their compensation if they are late or do not show up to work.

32.     Defendants have jointly required Plaintiffs and the Class Members to work six or more hour shifts, and if Plaintiffs or the Class Members want to leave early, Defendants have made deductions from their compensation.

33.     Plaintiffs and the Class Members primary responsibilities are performing dances on stage, interacting with customers, and providing private "VIP Room" performances for customers.

34.     Plaintiffs and the Class members are not and have not been paid an hourly rate. Instead, they have been paid on a per-dance piece rate basis. This pay varied based on whether it

was a day shift or a night shift, and whether it was a regular dance or a session in the VIP Room, plus tips.

35.     Because of the numerous deductions that Defendants have jointly made from the Plaintiffs' and Class Members' compensation, the Plaintiffs' and Class Members weekly compensation frequently fell below federal and state minimum wage. For example, there were weeks in which Plaintiff McGrew worked approximately 30 hours but was paid only $10 after deductions were made. Likewise, there were weeks in which Plaintiff Gunter worked approximately 30 hours but was paid only $10 after deductions were made. Plaintiff Dunlap also had weeks in which she worked approximately 30 hours but was paid only $10 after deductions were made.

36.     As a matter of economic reality, Defendants Lowrie and Ocello are individually liable as employers. As owners and directors, Defendants Lowrie and Ocello exercised operational control over Plaintiffs and Class Members by setting the terms and conditions of Plaintiffs' and Class Members work.   Upon information and belief Defendants Lowrie and Ocello had the power to hire and fire Plaintiffs and Class Members. Additionally, Defendants would attend PT's Showclub and would directly supervise Plaintiffs and the Class Members.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

37.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 36 *supra*.

38.     The named Plaintiffs bring this action individually and on behalf of a class of individuals similarly situated.   The class of individuals similarly situated encompasses all individuals who, like the Plaintiffs, have performed or currently perform entertainment services for the Defendants as exotic dancers at PT's Showclub in Louisville, KY.   The Class meets all

the prerequisites of Fed. R. Civ. P. 23.  On information and belief, at least 40 exotic dancers have performed entertainment services for the Defendants at PT's Showclub in Louisville, KY. during the applicable statutory period.  The Plaintiffs and the Class members' claims related to their misclassification are not only typical of the claims of putative class members, they are identical. Common issues, such as whether the Defendants' policy of classifying exotic dancers as independent contractors rather than employees, predominate over any individualized issues. Plaintiffs and their counsel, who have been class counsel in many similar cases, will adequately represent the putative class, and a class action is the superior method of trying these claims.

39.   The Defendants have jointly acted on grounds relating to all of their exotic dancers.  Thus, common questions of law or fact predominate over any individual issues and therefore a class action is superior to individual adjudications.  Furthermore, class adjudication is superior because separate actions would create a risk of inconsistent adjudication regarding the legality of the Defendants treatment of all of their exotic dancers.

40.   Plaintiffs McGrew and Gunter also meet the requirements for a collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), and will request the court to grant conditional certification and to order notices to potential opt-in individuals who have performed entertainment services as exotic dancers for the Defendants and who were classified as independent contractors.

41.   Potential opt-in members of the collective action are similarly situated to Plaintiffs McGrew and Gunter.  They all hold or have held the same job position and have or have had substantially similar job requirements and pay provisions.  They are or have been subject to the same common practices, policies, and plans of the Defendants, including the Defendants misclassification of their exotic dancers as independent contractors, Defendants'

10

practice of making unlawful deductions from the exotic dancers' compensation, and Defendants' consistent failure to pay the exotic dancers the minimum wage.

**COUNT I**
**Kentucky Wage Payment Law**
**(Unlawful Deductions)**

42.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 41 *supra*.

43.     At all times relevant to this action, Plaintiffs and the Class members were employees of Defendants within the meaning of KRS 337.010 § (1)(e).

44.     At all times relevant to this action, Defendants were Plaintiffs' and the Class members' employers within the meaning of KRS 337.010(1)(d).

45.     Defendants have jointly deducted and continue to jointly deduct certain expenses directly from the compensation it pays, including deductions for so-called stage "lease" fees for each shift, penalties for being late, calling off of a shift, or leaving a shift early, and other deductions. Moreover, Defendants have jointly compelled and continue to jointly compel Plaintiffs and the Class members to incur certain expenses which would normally be borne by an employer, such as a mandatory policy requiring the dancers to "tip out" the DJ, bar tenders and doormen.

46.     The actions of Defendants as set forth above violate the Kentucky Wage Payment Law, K.R.S. 337.060, by imposing unlawful deductions from Plaintiffs and the Class members' pay.

47.     Defendants have characterized Plaintiffs and the class members as independent contractors although the nature and the character of their job duties and Defendants' joint control

over the conditions of their employment qualify them as joint employees of Defendants as these terms are defined by KRS 337.010 and 803 KAR 1:005.

48.    Pursuant to KRS 337.385, Plaintiffs seek reimbursement for all deductions taken by Defendants from their pay, an equal amount in liquidated damages and any other relief which may be necessary to make them whole.

## COUNT II
### Fair Labor Standards Act
**(Plaintiffs McGrew and Gunter on behalf of themselves and all other similarly situated)**

49.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 48 *supra*.

50.    The actions of Defendants as set forth above are in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, for their failure to pay Plaintiffs and the Class members at the minimum wage for all hours worked each week.

51.    Defendants VCG Holding Corp. and Kentucky Restaurant Concepts, Inc. are "employers" for the purposes of the FLSA, 29 U.S.C. § 203(s), because they have annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce.

52.    Defendants Troy Lowrie and Michael Ocello are also "employers" under 29 U.S.C §203(d) because they have acted directly or indirectly in the interests of Defendants VCG Holding Corp. and Kentucky Restaurant Concepts, Inc. in relation to their employees, including Plaintiffs and the Class members. Defendants Lowrie and Ocello have the authority to hire, fire, and otherwise discipline the exotic dancers, supervise the work of the exotic dancers, or have the power to determine the rate and method of payment of the exotic dancers.

53.    Plaintiffs assert that Defendants jointly suffer or permit Plaintiffs and the Class members to work for them as exotic dancers and that under the economic realities test, those dancers are and have been misclassified by the Defendants as independent contractors.

54.     Defendants have jointly imposed so many deductions on the compensation received by Plaintiffs and the Class Members that Defendants have frequently failed to pay the exotic dancers at least minimum wage for each week worked. Defendants, have jointly knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay minimum wage with respect to Plaintiff in this action and continue to engage in willful violations of the FLSA.

**COUNT III**
**Kentucky Wage Payment Law (Minimum Wage Violation)**

55.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 54 supra.

56.     At all times relevant to this action, Plaintiffs and the Class members were employees of Defendants within the meaning of KRS 337.010 § (1)(e).

57.     At all times relevant to this action, Defendants were Plaintiffs' and the Class members' employers within the meaning of KRS 337.010(1)(d).

58.     KRS 337.275 requires all employers to compensate their employees for at least the minimum wage of $7.25 per hour.

59.     Defendants have imposed so many deductions upon the compensation received by the Plaintiffs and the Class Members that Defendants have frequently failed to pay the Plaintiffs and the Class Members at least minimum wage for each week worked, jointly violating KRS 337.275.

60.     Defendants, have jointly knowingly, willfully, or with reckless disregard failed to pay Plaintiffs and the Class members the full minimum wage for each week worked.

61.     As a result of Defendants' joint violations of KRS 337.285, Plaintiffs are entitled to recover unpaid minimum wages dating five (5) years back, KRS 413.120 (2), plus an

additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action, pursuant to KRS 337.385.

## COUNT IV
### Defendants' Violation of KRS 337.065 (Unlawful Requirement of Mandatory Remittances)

62.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 61 supra.

63.    At all times relevant to this action, Plaintiffs and the Class members were employees of Defendants within the meaning of KRS 337.010 § (1)(e).

64.    At all times relevant to this action, Defendants were Plaintiffs' and the Class members' employers within the meaning of KRS 337.010(1)(d).

65.    At all times relevant to this action, Defendants jointly required Plaintiffs and the Class members to remit a portion of their wages to bartenders, disc jockeys and door men employed by the Defendants.

66.    These "tip pools" were jointly maintained by the Defendants and Plaintiff and the Class Members' participation in the above described tip pools was not voluntary and was jointly required by Defendants at all times.

67.    In maintaining and/or administering the involuntary tip pools, Defendants jointly violated KRS 337.065.

68.    Defendants' maintenance and/or administration of the illegal tip pool was conducted knowingly, willfully, or with reckless disregard of KRS 337.065.

69.    As a result of Defendants' joint violation of KRS 337.065, Plaintiffs and the Class Members, pursuant to KRS 337.385 are entitled to recover the sum of their remittances to the illegal tip pools, plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action.

14

**COUNT V**
**Defendants' Violation of KRS 337.020 (Failure to Pay Plaintiffs and the Class Members Within 18 days of Last Day Worked)**

70. Plaintiffs and the Class Members reallege and reincorporate the allegations set forth in paragraphs 1 through 69 as though set forth fully herein.

71. At all times relevant to this action, Plaintiffs the Class members were employees of Defendants within the meaning of KRS 337.010 § (1)(e).

72. At all times relevant to this action, Defendants were Plaintiffs' and the Class members' employers within the meaning of KRS 337.010(1)(d).

73. Defendants, by jointly imposing multiple deductions on the compensation received by Plaintiffs and the Class members, jointly failed to pay Plaintiffs and the Class Members the full minimum wage as required by KRS 337.275.

74. Defendants, by jointly failing to pay Plaintiffs and the Class Members the full minimum wage at several and various times during Plaintiffs and the Class Members' employment, similarly failed to pay Plaintiffs and the Class members in full for their work within 18 days of its completion, and thereby violated KRS 337.020.

75. As a result of Defendants' joint violation of KRS 337.020, Plaintiffs and the Class Members are entitled to recover a sum equal to their untimely paid wages dating (5) years back, plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and cost of this action, pursuant to K.R.S. 337.385.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that this Court enter the following relief:

1.      Permission for Plaintiffs to notify fellow workers of their right to opt-in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. 216(b);

2.      Permission to pursue their Kentucky claims as a class action pursuant to Fed. R. Civ. P. 23;

3.      Restitution for all deductions taken from the Plaintiffs' and the Class' pay;

4.      For an award of back pay equal to the amount of all unpaid minimum wages for five (5) years preceding the filing of this complaint to the present, plus an additional equal amount in liquidated damages, according to the applicable statute of limitations (KRS 413.120(2)) for violations of KRS 337.385;

5.      For an award of liquidated damages equal to the amount of unlawful deductions and unpaid back wages, pursuant to federal and state law;

7.      For an award of attorney's fees and costs pursuant to 29 U.S.C. § 216(b) and KRS 337.385;

8.      For an order pursuant to KRS 337.990 assessing a civil penalty of up to $1,000 but not less than $100 for each of Defendants' unlawful deductions from Plaintiffs' and the Class members' wages;

9.      For an order pursuant to KRS 337.990 assessing a civil penalty of up to $1,000 but not less than $100 for each of Defendants' failure to pay Plaintiffs and the Class members their minimum wage;

10.     For an order pursuant to KRS 337.990 assessing a civil penalty of up to $1,000, but not less than $100 for each of Defendants' failure to pay Plaintiffs and the Class members within 18 days of their last day worked;

11.     For an order pursuant to KRS 337.990 assessing a civil penalty of up to $1,000 but not less than $100 for each of Defendants' unlawful remittance imposed on Plaintiffs and/or the Class members which required them to "tip out" doormen, disc jockeys and/or bartenders during the course of their employment for Defendants; and

12.     Any other relief to which the Plaintiffs and the Class members may be entitled.

DATED:  June 23, 2016                Respectfully Submitted,
MELISSA MCGREW and KRISTINA
DUNLAP, et al., individually and on behalf
of all others similarly situated,
By their attorneys,


*/s/ Trent R. Taylor*_____
Trent Taylor (Kentucky Bar No. 94828)
Robert E. DeRose (*pro hac vice forthcoming*)
**BARKAN MEIZLISH HANDELMAN
GOODIN DEROSE WENTZ, LLP**
250 E. Broad St.,10th floor
Columbus Ohio 43215
614-221-4221
ttaylor@barkanmeizlish.com
bderose@barkanmeizlish.com

Harold L. Lichten
(*pro hac vice* forthcoming)
Thomas P. Fowler
(*pro hac vice* forthcoming)
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994 5800
hlichten@llrlaw.com
tfowler@llrlaw.com

Donald F. Fontaine
(*pro hac vice forthcoming*)
97 India Street
P.O. Box 7590 Portland, Maine 04112
207-879-1300
dff@fontainelaw.com