UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00397-TBR

MELISSA MCGREW, *et al.*                                    PLAINTIFFS

v.

VCG HOLDING CORP., *et al.*                                 DEFENDANTS

### Memorandum Opinion and Order

Plaintiffs Melissa McGrew, Sarah Gunter, and Kristina Dunlap were all at one time exotic dancers at PT's Showclub in Louisville, Kentucky. They allege that Defendants, the club's owners and operators, misclassified them as independent contractors rather than employees, paid them less than minimum wage, and deducted certain fees and penalties from their paychecks, all in violation of federal and state law. On behalf of themselves and other similarly-situated dancers, Plaintiffs seek back pay, restitution, civil penalties, costs, and attorney's fees. Defendants contend that Plaintiffs' claims are all subject to arbitration on an individual, non-class basis because each Plaintiff signed multiple arbitration agreements while she was employed at PT's Showclub. In turn, Plaintiffs claim that the arbitration agreements are unenforceable because Plaintiffs were intoxicated when the agreements were executed, and because managers provided Plaintiffs with little or no time to read and consider the agreements.

Defendants filed the instant motion, asking this Court to dismiss Plaintiffs' suit pursuant to Federal Rule of Civil Procedure 12(b), or in the alternative, to compel arbitration of Plaintiffs' individual claims and to dismiss Plaintiffs' class and

collective action claims.   [DN 8.]   Plaintiffs responded, [DN 17], and Defendants replied, [DN 26].   Fully briefed, this matter is ripe for adjudication.   For the reasons that follow, the Court finds that Plaintiffs' claims are all subject to arbitration on an individual, non-class basis.   Accordingly, Defendants' motion to compel arbitration and dismiss [DN 8] is GRANTED.

## I. Facts and Procedural History

PT's Showclub is an adult entertainment venue located in Louisville, Kentucky. [DN 1 at 6.] Among other things, the "entertainment" includes performance by exotic dancers.   [*Id.*]   At various times between 2004 and 2015, Plaintiffs Melissa McGrew, Sarah Gunter, and Kristina Dunlap worked as dancers at PT's Showclub. As a condition of their employment, Defendants required Plaintiffs to execute documents called "Entertainment Leases." The lease agreements vary somewhat in form, but each provides that Plaintiff is an independent contractor, and that all disputes between the parties must be resolved thorugh binding arbitration on an individual, non-class basis.

Plaintiff McGrew began working at PT's Showclub in April 2004, and worked there intermittently through 2014.   During her tenure, she executed six separate Entertainment Leases.   *See* [DN 8-2 at 21, 39, 51, 59, 113, 128.][1]   Each lease agreement contained an arbitration provision identical or materially similar to the provision below, taken from McGrew's first agreement:

---

[1] McGrew executed Entertainment Leases on: April 1, 2004, [DN 8-2 at 21]; November 11, 2008, [*id.* at 39]; August 12, 2009, [*id.* at 51]; March 14, 2010, [*id.* at 59]; April 9, 2014 [*id.* at 113]; and May 30, 2014 [*id.* at 128].

2

21. <u>Arbitration/Attorney Fees and Costs/Waiver of Class Action.</u>

<u>ANY CONTROVERSY, DISPUTE, OR CLAIM ARISING OUT OF THIS LEASE OR OTHERWISE OUT OF ENTERTAINER PERFORMING AT THE PREMISES OF THE CLUB, SHALL BE EXCLUSIVELY DECIDED BY ARBITRATION UNDER THE FEDERAL ARBITRATION ACT, IN CONFORMITY WITH THE RULES AND PROCEDURES AS ESTABLISHED BY THE AMERICAN ARBITRATION ASSOCIATION AND AS MAY BE MODIFIED BY ANY STATE ARBITRATION ACT.</u>   Any judgment or award may be entered in any court having jurisdiction thereof.

Any judgment, order, or ruling arising out of a dispute between the parties shall award costs incurred for the proceedings and reasonable attorney fees to the prevailing party.

<u>ENTERTAINER AGREES THAT ALL CLAIMS BETWEEN HER AND THE CLUB WILL BE LITIGATED INDIVIDUALLY AND THAT SHE WILL NOT CONSOLIDATE OR SEEK CLASS TREATMENT FOR ANY CLAIM. ENTERTAINER FURTHER AGREES NOT TO COMMENCE ANY ACTION, SUIT OR ARBITRATION PROCEEDING RELATING, IN ANY MANNER WHATSOEVER, TO THIS LEASE OR TO HER PERFORMING AT THE PREMISES OF THE CLUB, MORE THAN SIX MONTHS AFTER SHE LAST PERFORMED AT THE PREMISES, AND FURTHER AGREES TO WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.</u>

This paragraph 21 survives termination of this Lease.

[*Id.* at 23-24 (emphasis in original).]   McGrew also signed a document entitled "<u>BUSINESS STATUS SELECTION BY ENTERTAINER,</u>" stating her preference to be treated as an "Independent Professional Entertainer" rather than an employee. [*Id.* at 12-14.]

Plaintiff Dunlap began working at PT's Showclub in 2010, signing her first Entertainment Lease on March 24 of that year.   [*Id.* at 75.]   Her last lease agreement is dated December 12, 2011.   [*Id.* at 136.]   Dancers at PT's are required to renew their leases on a yearly basis, so according to Defendants, Dunlap could

3

not have worked at PT's more recently than 2012.  [*Id.* at 5.]  All told, Dunlap signed five lease agreements, each containing an arbitration provision.  *See* [*id.* at 75, 86, 93, 102, 136.][2]

Plaintiff Gunter signed three Entertainment Leases, on May 17, 2007, November 13, 2014, and April 16, 2015, respectively.  [*Id.* at 31, 150, 160.][3]  Each agreement contains an arbitration provision.  The 2015 iteration of her agreement also contains clauses stating that "[t]he costs of arbitration shall be borne equally by the entertainer and the club unless the arbitrator concludes that a different allocation is required by law," [*id.* at 164 (emphasis removed)] (the "cost-sharing provision"), and that "[a]ny ruling arising out of a claim between the parties shall, to the extent not precluded by law, award costs incurred for the proceedings, including reasonable attorney fees, to the prevailing party," [*id.* (emphasis removed)] (the "fee-shifting provision").  Like McGrew, Gunter signed a form indicating her preference to be treated as an "Independent Professional Entertainer."  [*Id.* at 16-18.]

Although Defendants classified Plaintiffs as independent contractors, Plaintiffs claim that as a matter of economic reality, they were in fact employees.  *See* [DN 1 at 6-9.]  Particularly, Plaintiffs state that Defendants set Plaintiffs' rate of pay and work schedules, told Plaintiffs how they must appear and dress while dancing, and exerted supervisory control over their performances.  [*Id.* at 6-8.]

---

[2] Dunlap executed Entertainment Leases on: March 24, 2010, [DN 8-2 at 75]; January 1, 2011, [*id.* at 86]; January 28, 2011, [*id.* at 93]; July 5, 2011, [*id.* at 102]; and December 12, 2011, [*id.* at 136].

[3] Gunter's November 13, 2014 lease agreement is missing its signature page.  *See* [DN 8-2 at 150-54.]  However, Gunter initialed and dated each existing page, including the page containing the arbitration provision.  [*Id.* at 154.]

Despite this control, Plaintiffs say, Defendants failed to pay Plaintiffs an hourly wage. [*Id.* at 8.] Instead, Plaintiffs were paid per dance. [*Id.* at 9.] Because of this payment scheme, and because Defendants deducted certain fees and penalties from Plaintiffs' paychecks, Plaintiffs' aver that their weekly compensation routinely fell below the federal and state minimum wage. [*Id.*] Each Plaintiff claims that on multiple occasions, she worked thirty hours during a week but was paid only ten dollars. [*Id.*]

On behalf of themselves and a proposed class of similarly-situated dancers, Plaintiffs filed the instant suit. All three Plaintiffs claim that Defendants violated certain provisions of Kentucky's wage-and-hour laws by deducting certain sums from their paychecks, paying them below the state minimum wage, requiring them to participate in illegal tip pools, and failing to pay them in full within eighteen days of their last working day. [*Id.* at 11-15.] Plaintiffs McGrew and Gunter further allege that Defendants violated the Fair Labor Standards Act by misclassifying them as independent contractors rather than employees and by compensating them below the federal minimum wage.[4] [*Id.* at 12-13.] By virtue of Defendants' unlawful actions, Plaintiffs claim, they and their proposed class members are entitled to restitution, back pay, statutory damages, costs, and attorney's fees. [*Id.* at 16.]

In response, Defendants moved to compel arbitration and dismiss Plaintiffs' complaint. *See* [DN 8.] Their precise arguments are detailed below, but broadly,

---

[4] The parties agree that any FLSA claims Plaintiff Dunlap might have fall outside the FLSA's statute of limitations.

Defendants believe that Plaintiffs are bound by the arbitration provisions contained in their lease agreements.   Plaintiffs responded, [DN 17], and Defendants replied, [DN 26].   Additionally, Plaintiffs filed a motion for leave to file a sur-reply, [DN 28], to which Defendants responded, [DN 29].   Plaintiffs' motion [DN 28] is GRANTED, and the Court will consider Plaintiffs' tendered sur-reply in ruling upon Defendants' motion to dismiss.

After Defendants' motion to compel arbitration and dismiss was fully briefed, but before the Court issued its ruling, Plaintiffs filed a motion for conditional certification of their proposed class under the FLSA.   *See* [DN 31.]   Defendants responded to Plaintiffs' conditional certification motion with a motion of their own, asking the Court to stay Plaintiffs' motion until the Court ruled upon Defendants' motion to compel arbitration and dismiss.   *See* [DN 32.]   After responses and replies, [DN 33; DN 34], this matter is ripe for adjudication.

## II. Standard of Review

The Federal Arbitration Act provides that a written agreement to arbitrate disputes arising out a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.   A party seeking to enforce an arbitration agreement may request that litigation be stayed until the terms of the arbitration agreement have been fulfilled.   *Id*. § 3.   Upon such application, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the

6

court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*. § 4.

Before compelling arbitration, the Court "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). Such review requires the Court to determine (1) whether "a valid agreement to arbitrate exists between the parties," and (2) whether "the specific dispute falls within the substantive scope of the agreement." *Id.* (quoting *Javitch*, 315 F.3d at 624). With respect to the arbitration agreement's validity, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks and citations omitted). With respect to the agreement's scope, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986) (internal citations and quotation marks omitted). In other words, keeping in mind the "strong federal policy in favor of arbitration . . . any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration," *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000), especially when the arbitration clause is written

broadly to encompass all claims arising under the contract, *AT&T Techs.,* 475 U.S. at 650.

### III. Discussion

As stated above, the Federal Arbitration Act requires courts to enforce arbitration agreements when the agreement is valid and covers the dispute at issue. *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). Here, Plaintiffs do not deny that their claims fall within the scope of the broadly-written arbitration clauses contained in their lease agreements. Thus, the sole issue before the Court is whether the clauses are valid and enforceable against Plaintiffs.

In an effort to stave off arbitration, Plaintiffs make several arguments. They first contend that as a matter of law, both the Fair Labor Standards Act and the National Labor Relations Act prevent Defendants from forcing Plaintiffs to arbitration. Further, Plaintiffs say that even if their agreements are not *per se* unenforceable, their claims of intoxication raise a genuine issue of material fact as to the validity of the agreements. In response, Defendants argue the weight of authority holds that the FLSA and NLRA do not preclude arbitration agreements like the ones at issue here, and that Plaintiffs' unconscionability claims must be decided by the arbitrator in the first instance. Defendants also state that Plaintiffs' state law wage-and-hour claims are not cognizable as a class action under Kentucky law.

The Court commends the parties on the quality of briefing in this matter. Both Plaintiffs and Defendants raise difficult questions regarding the proper reach

of the Federal Arbitration Act, and the Court is mindful that some of those questions are currently pending before the Kentucky Supreme Court, the Sixth Circuit, and the Supreme Court of the United States. Nevertheless, the overwhelming weight of authority holds that the arbitration agreements Plaintiffs signed are valid and enforceable under the FLSA and NLRA. Moreover, because Plaintiffs' claims of drunkenness and coercion go to the validity of the agreements as a whole, they too must be decided by the arbitrator. Because all of Plaintiffs' claims are subject to arbitration on an individual, non-class basis, the Court need not reach the other arguments thoughtfully raised by the parties.

## A. Federal Arbitration Act

In 1925, Congress enacted the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, in response to the common law hostility toward arbitration and the refusal of many courts to enforce arbitration agreements. The Supreme Court has stated that the FAA codifies "a national policy favoring arbitration when the parties contract for that mode of dispute resolution," *Preston v. Ferrer*, 552 U.S. 346, 349 (2008), and places arbitration agreements "upon the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The FAA establishes a procedural framework applicable in both federal and state courts. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984). When a party to an arbitration agreement petitions a court to order a dispute into arbitration, as Defendants do here, that framework requires the court to answer

9

two questions.   First, based upon state law, was the parties' agreement to arbitrate valid?   9 U.S.C. § 4; *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).   Second, if the agreement was valid, does the underlying dispute fall within the scope of the arbitration agreement?   *Id.*

To decide whether a dispute should be submitted to arbitration, the Court must first determine whether "a valid agreement to arbitrate exists between the parties."   *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)).   The FAA provides that arbitration agreements need not be enforced when "such grounds . . . exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2. Commonly known as the savings clause, this provision "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).   One such generally applicable defense is illegality, because "illegal promises will not be enforced in cases controlled by the federal law."   *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982).   When Congress does provide that certain types of claims cannot be forced to arbitration, it may fairly be said that agreements requiring those claims to be arbitrated are illegal and unenforceable.

Generally speaking, federal statutory claims are subject to arbitration "unless the FAA's mandate has been overridden by a contrary congressional command." *Am. Express Co. v. Italian Colors Rest.*, __ U.S. ___, 133 S. Ct. 2304, 2309 (2013) (internal quotation marks and citations omitted).   To discern whether such a command exists, courts look to "the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] purposes." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).   In the context of class and collective action suits like Plaintiffs', courts must decide whether the federal statute at issue "'evinc[es] an intention to preclude a waiver' of class-action procedure."   *Italian Colors*, 133 S. Ct. at 2309 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).   As the parties opposing arbitration, Plaintiffs bear the burden of showing that Congress intended their claims to fall outside the FAA.   *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1331 (11th Cir. 2014) (citing *Gilmer*, 500 U.S. at 26).

Plaintiffs argue that two statutes, the Fair Labor Standards Act and the National Labor Relations Act, preclude arbitration of their claims.   The Court will address each statute in turn, keeping in mind that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1991).

## B. Fair Labor Standards Act

For nearly eight decades, the Fair Labor Standards Act has "protect[ed] certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To accomplish the "prime purpose of . . . aid[ing] the unprotected, unorganized and lowest paid of the nation's working population," *id.* at 707 n.18, Congress instituted a system of nationwide minimum wages and maximum hours, and allowed aggrieved workers to bring suit when employers violate certain provisions of the Act. Pertinent to this case, "[s]ection 16(b) of the FLSA explicitly provides that an employee may bring an action for FLSA violations 'for and in behalf of himself . . . and other employees similarly situated.'" *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1332 (11th Cir. 2014) (quoting 29 U.S.C. §§ 216(b)-(c)). Unlike traditional class action suits, FLSA collective actions require similarly situated persons to "opt into" the suit. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

Neither the Supreme Court nor the Sixth Circuit has squarely addressed whether employers may require their employees to sign agreements that mandate arbitration of their FLSA claims on an individual, non-class basis. Still, for several reasons, this Court believes that the FLSA does not contain a "contrary congressional command" requiring Plaintiffs' claim to be heard in a judicial forum. *Am. Express Co. v. Italian Colors Rest.*, __ U.S. ___, 133 S. Ct. 2304, 2309 (2013).

First, the Supreme Court has held that arbitration agreements are enforceable in the similar context of Age Discrimination in Employment Act (ADEA) claims. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991). In *Gilmer*, the plaintiff, a registered securities representative, alleged that his employer fired him because of his age, in violation of the ADEA. *Id.* at 23-24. The employer moved to compel arbitration of Gilmer's ADEA claim, relying upon an arbitration clause contained in Gilmer's securities registration application. *Id.* at 24. Siding with Gilmer's employer, the Court held that Gilmer had "not met his burden of showing that Congress, in enacting the ADEA, intended to preclude arbitration of claims under that Act." *Id.* at 35. In so holding, the Court noted that neither the ADEA's plain text nor its legislative history explicitly precluded arbitration. *Id.* at 26. Further, the Court found no "inherent inconsistency" between the "important social policies" underlying the ADEA and "enforcing agreements to arbitrate age discrimination claims." *Id.* at 27. Finally, rejecting Gilmer's argument "that arbitration procedures cannot adequately further the purposes of the ADEA because they do not provide for . . . class actions," the Court wrote that "even if the arbitration could not go forward as a class action . . . the fact that the ADEA provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." *Id.* at 32 (internal quotation marks and brackets omitted). As the Eleventh Circuit recently noted, "the ADEA expressly adopts the collective action language set forth in FLSA § 16(b)." *Walthour*, 745 F.3d at 1333 (citing 29 U.S.C. § 626(b)).

Relying on *Gilmer*, the Court in *Italian Colors* upheld arbitration agreements that forced merchants to arbitrate their antitrust claims against American Express on a non-class basis. *Italian Colors*, 133 S. Ct. at 2310-12.   After finding that federal antitrust laws contained no "contrary congressional command," the Court rejected the plaintiffs' arguments that forcing them to arbitrate their claims individually "prevent[ed] the 'effective vindication' of a federal statutory right."   *Id.* at 2310.   "In *Gilmer*," the Court wrote, "we had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue, the [ADEA], expressly permitted collective actions."   *Id.* at 2311 (citing *Gilmer*, 500 U.S. at 32).   *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (FAA preempts California rule holding that certain class action waivers in arbitration agreements are unconscionable).

*Gilmer* and *Italian Colors* make clear that arbitration agreements requiring plaintiffs to individually arbitrate their federal statutory claims are not *per se* unenforceable.   Although there is no controlling authority directly on point, the Court is satisfied that the FLSA does not "evince[] an intention to preclude a waiver of judicial remedies for the statutory rights at issue."   *Mitsubishi Motors Corp. v. Soler-Chrysler Plymouth, Inc.*, 473 U.S. 614, 628 (1985).   Like the ADEA, "the FLSA contains no explicit provision precluding arbitration or a waiver of the right to a collective action."   *Walthour*, 745 F.3d at 1334.   Like the ADEA, the FLSA's legislative history "do[es] not show that Congress intended the collective action provision to be essential to the effective vindication of the FLSA's rights."   *Id.* at

14

1335; *see Gilmer*, 500 U.S. at 26.   And like the ADEA, enforcement of Plaintiffs' collective action waivers is not inconsistent with the policy goals the FLSA seeks to advance.   *Walthour*, 745 F.3d at 1335; *Gilmer*, 500 U.S. at 26-27.

The overwhelming weight of persuasive authority supports the Court's conclusion.   Each circuit court to address this issue has concluded that the FLSA does not contain the "contrary congressional command" necessary to override the FAA's mandate.   *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334 (11th Cir. 2014); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002).   The Sixth Circuit has not yet staked out its position, and its closest cases are readily distinguishable.   In *Boaz v. FedEx Customer Information Services, Inc.*, 725 F.3d 603, 606 (6th Cir. 2013), the court held invalid a provision contained in an employment agreement requiring all an employees' claims, including FLSA claims, to be brought within six months. Relying on *Boaz*, the court decided in *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 592 (6th Cir. 2014), that employers could not force employees to litigate their FLSA claims on an individual basis.   But importantly, the court noted that neither of its decisions involved an arbitration agreement, and suggested that it would reach a different result if such an agreement was present.   *Id.*

The Court is also aware that contrary authority exists within this circuit.   In *Gaffers v. Kelly Services, Inc.*, __ F. Supp. 3d ___, 2016 WL 4445428, at *10 (E.D.

15

Mich. 2014), *appeal docketed*, No. 16-2210 (6th Cir. Aug. 26, 2016), the district court held that individual arbitration provisions are illegal and unenforceable. But *Gaffers* is currently on appeal before the Sixth Circuit, and is also contradicted by at least one other district court within the circuit. *See Colley v. Scherzinger Corp.*, No. 1:15-cv-720, 2016 WL 2998111, at *5-7 (S.D. Ohio May 25, 2016). In short, this Court is persuaded by the reasoning of the Eleventh Circuit in *Walthour* and the other circuit courts that hold arbitration agreements like Plaintiffs' may be enforced without running afoul of the FLSA. Nothing suggests that the Sixth Circuit will depart from this strong majority position.

### C. National Labor Relations Act

For many of these same reasons, Plaintiffs' arbitration agreements do not violate the National Labor Relations Act. Section 7 of the NLRA provides that "[e]mployees shall have the right to . . . engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. When an employer "interfere[s] with, restrain[s], or coerce[s] employees in the exercise" of a concerted activity, it commits an "unfair labor practice" in violation of NLRA § 8(a)(1). 29 U.S.C. § 158(a). Plaintiffs contend that their participation in a wage-and-hour class action suit is a "concerted activity" within the meaning of the NLRA, and that Defendants committed an unfair labor practice by seeking the limit their right to participate in collective litigation.

Federal circuit courts are split regarding whether class action waivers contained in arbitration agreements violate the NLRA. The Second, Fifth, and

Eighth Circuits all hold that employers do violate the statute by requiring employees to sign such waivers. *See Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013); *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 362 (5th Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1053-54 (8th Cir. 2013). The Seventh and Ninth Circuits disagree. *See Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1161 (7th Cir. 2016), *cert. granted*, __ S. Ct. ___, 2017 WL 125664 (U.S. Jan. 13, 2017) (No. 16-285); *Morris v. Ernst & Young LLP*, 834 F.3d 975, 989-90 (9th Cir. 2016), *cert. granted*, __ S. Ct. ___, 2017 WL 125665 (U.S. Jan. 13, 2017) (No. 16-300). The Supreme Court recently consolidated and granted certiorari in *Lewis*, *Morris*, and another Fifth Circuit case, *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013 (5th Cir. 2015), *cert. granted*, __ S. Ct. ___, 2017 WL 125666 (U.S. Jan. 13, 2017) (No. 16-307). The Court will likely hear argument in those cases next term.

This Court agrees with the Fifth Circuit's reasoning. In *D.R. Horton*, the court recognized "[n]either the NLRA's statutory text nor its legislative history contains a congressional command against application of the FAA," and there is no "inherent conflict between the FAA and the NLRA's purpose." *D.R. Horton*, 737 F.3d at 361. The Fifth Circuit also held that the FAA's "savings clause is not a basis for invalidating the waiver of class procedures in the arbitration agreement." *Id.* at 360. Accordingly, the court concluded that arbitration agreements like Plaintiffs' do not violate the NLRA and "must be enforced according to [their] terms." *Id.* at 362. While there is considerable disagreement among the circuits regarding this proposition, this Court believes that the majority position is most

17

sound, especially given the Supreme Court's express directive to "place arbitration agreements on an equal footing with other contracts." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).   The NLRA poses no obstacle to the enforcement of Plaintiffs' arbitration agreements.

### D. Unconscionability

Finally, Plaintiffs contend that even if arbitration agreements like theirs are permitted by law, their particular agreements are unenforceable because they are unconscionable.   Particularly, Plaintiffs claim that each lease agreement they signed was procedurally unconscionable because (1) they were encouraged to drink during their shifts and were in fact drunk when they signed, (2) Plaintiffs were given little or no time to review the agreements, and (3) the lease agreements were contracts of adhesion.   [DN 17 at 12-13.]   Gunter further argues that her lease agreement is substantively unconscionable because it contains two provisions requiring her to share the costs of the arbitration unless the arbitrator decides otherwise, and to pay Defendants' attorney's fees should they prevail at arbitration. [*Id.* at 14-16.]

As stated above, arbitration agreements need not be enforced when "grounds . . . exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.   This means that "agreements to arbitrate [may] be invalidated by 'generally applicable contract defenses, such as . . . unconscionability.'"   *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517

U.S. 681, 687 (1996)).   Courts apply state contract law in "determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros.*, 340 F.3d 386, 392-93 (6th Cir. 2003) (citations omitted).   Even when applying state contract law, "due regard must be given to the federal policy favoring arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 475-76 (1989)).

In *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002), the Sixth Circuit made clear that "in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole."   In other words, "attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken."   *Preston v. Ferrer*, 552 U.S. 346, 353 (2008).   Thus, "the party opposing . . . arbitration must state a 'well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement*, that would provide grounds for the revocation of the agreement to arbitrate.'"   *Great Earth*, 288 F.3d at 890 (quoting *Arnold v. Arnold Corp.-Printed Commc'ns for Bus.*, 920 F.2d 1269, 1278 (6th Cir. 1990)) (emphasis in original).

Here, Plaintiffs' procedural unconscionability arguments unquestionably go to the validity of their lease agreements as a whole, rather than the arbitration provisions specifically.   Plaintiffs do not contend that Defendants encouraged them

to drink only when they were considering the arbitration clauses.  They do not state that Defendants provided them ample time to review the portions of the agreements not dealing with arbitration.   Rather, Plaintiffs allege that their lease agreements are procedurally unconscionable *in their entirety* because of the suggestive circumstances surrounding their execution.  If Plaintiffs' allegations prove true, they may very well be entitled to have the agreements set aside.   But that is for the arbitrator, not this Court, to decide in the first instance.

Gunter's substantive unconscionability argument, however, does indeed go to "the validity of the arbitration clause itself."  *Great Earth*, 288 F.3d at 889.   In pertinent part, Gunter's April 16, 2015 lease agreement provides, "The cost of arbitration shall be borne equally by the entertainer and the club unless the arbitrator concludes that a different allocation is required by law."   [DN 8-2 at 164 (emphasis removed).]   Further, "Any ruling arising out of a claim between the parties shall, to the extent not precluded by law, award costs incurred for the proceedings, including reasonable attorney fees, to the prevailing party."   [*Id.* (emphasis removed).]   She claims that these cost-sharing and fee-shifting provisions are unconscionable because "[t]he 'existence of large arbitration costs could preclude [her] . . . from effectively vindicating her federal statutory rights in the arbitral forum.'"  *Roberts v. Blue World Pools, Inc.*, No. 3:15-CV-00335-TBR, 2015 WL 5315213, at *5 (W.D. Ky. Sept. 11, 2015) (quoting *Green Tree Fin. Corp.- Al. v. Randolph*, 531 U.S. 79, 90-91 (2000)).   In response, Defendants state that they do not intend to enforce these clauses against Gunter.   *See* [DN 25.]   Even if

they did, Defendants argue, other courts have upheld similar provisions in arbitration agreements. Finally, Defendants point out that Gunter's lease agreement contains a severability clause, which states, "If any provision of this Lease is declared to be illegal or unenforceable, this Lease shall, to the extent possible, be interpreted as if that provision was not a part of this Lease." [DN 8-2 at 163 (emphasis removed).]

As Plaintiffs correctly state, "the unconscionability of a contract or term is considered in light of the circumstances 'at the time the contract is made.'" *Clift v. RDP Co.*, 200 F. Supp. 3d 660, 676-77 (W.D. Ky. 2016) (quoting *Neely v. Consol Inc.*, 25 F. App'x 394, 401 (6th Cir. 2002)).   Thus, Defendants cannot moot the potential unconscionability of the cost-sharing and fee-shifting provisions by stipulating that they will not enforce those clauses.   Nevertheless, because of the lease agreement's severability clause, this Court need not decide whether the provisions are substantively unconscionable.   The inclusion of an unconscionable provision in an arbitration agreement will not render the entire agreement invalid unless "the arbitration clause is so intertwined with the unconscionable provision that the two clauses cannot be severed from each other." *Brookdale Sr. Living Inc. v. Stacy*, 27 F. Supp. 3d 776, 790 (E.D. Ky. 2014) (citation omitted).   Here, the cost-sharing and fee-shifting provisions are readily severable from the substantive provisions of the agreement – namely, that all Plaintiffs' claims are subject to arbitration on an individual, non-class basis. Therefore, even if the clauses were substantively unconscionable, the remainder of Plaintiffs' agreements could be enforced.

21

Needless to say, the Court has considerable concerns regarding the cost-sharing and fee-shifting provisions. However, Defendant's agreement to bear the costs and shift no fees to the Plaintiffs alleviates these concerns to some extent. The Court need not pass on these issues.

### E. Disposition

As explained above, all Plaintiffs' claims are subject to arbitration on an individual, non-class basis. Each Plaintiff admits that she signed multiple lease agreements containing an arbitration clause that covers the claims at issue in her suit. Neither the Fair Labor Standards Act nor the National Labor Relations Act contains the "contrary congressional command" required to override the Federal Arbitration Act's clear mandate that arbitration agreements be enforced according to their terms. *Am. Express Co. v. Italian Colors Rest.*, __ U.S. ___, 133 S. Ct. 2304, 2309 (2013). And while Plaintiffs' claims of intoxication and coercion do indeed give this Court pause, their arguments ultimately "challenge[] the validity of the contract as a whole." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). As such, the arbitrator must get the first bite at the apple. To be clear, the Court does not condone the employment practices Plaintiffs have alleged in this case. But faced with the "strong federal policy favoring arbitration," *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), this Court has no choice but to enforce Plaintiffs' lease agreements and order these claims to arbitration.

The only remaining issue, then, is the proper disposition of this case. Because Defendants have the right to compel arbitration of Plaintiffs' claims, the

FAA provides that the Court must stay all further proceedings until arbitration concludes.   9 U.S.C. § 3.   However, several circuit courts, including the Sixth Circuit, hold that when all the plaintiff's claims are subject to arbitration, dismissal is the proper remedy.   *Braxton v. O'Charley's Restaurant Properties, LLC*, 1 F. Supp. 3d 722, 728-29 (W.D. Ky. 2014) (detailing circuit split and listing cases); *see Ozormoor v. T–Mobile USA, Inc.,* 354 F. App'x 972, 975 (6th Cir. 2009) ("[Plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them. We have already rejected that argument."); *Hensel v. Cargill, Inc.,* 198 F.3d 245, 1999 WL 993775, at *4 (6th Cir. 1999) (unpublished table decision) ("Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory. However, litigation in which all claims are referred to arbitration may be dismissed.").   Because the Court is satisfied that all of the Plaintiffs' claims are subject to arbitration, it will dismiss this action, rather than stay these proceedings.

23

## IV. Conclusion and Order

For the foregoing reasons, IT IS HEREBY ORDERED:

(1) Plaintiffs' motion for leave to file a sur-reply [DN 28] is GRANTED.

(2) Defendants' motion to compel arbitration and dismiss [DN 8] is GRANTED.

(3) Plaintiffs' motion for conditional certification [DN 31] is DENIED AS MOOT.

(4) Defendants' motion to stay Plaintiffs' conditional certification motion [DN 32] is DENIED AS MOOT.

An appropriate order and judgment will follow.

CC: Counsel of Record